**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELOI KOUEKASSAZO,** | : | |
| | : | Case No. 15-CV-2427 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Jolson |
| **INTELLISOURCE,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

Before the Court are a Motion for the Court's Intervention in Discovery (Doc. 42), a Motion for the Court's Arbitration (Doc. 43), and a Motion for Protective Order (Doc. 47) filed by Plaintiff Eloi Kouekassazo. Also before the Court are a Motion for Protective Order (Doc. 45) and a Motion for Summary Judgment filed by Defendants IntelliSource and zulily, inc. n/k/a zulily, llc ("Zulily") (Doc. 52). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment, and **DENIES** all other motions as **MOOT**.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff, proceeding *pro se*, is a black immigrant from Congo. (Am. Compl., Doc. 37 at 4.) Plaintiff was hired by IntelliSource in January of 2012 to work at a Zulily inventory warehouse in Lockbourne, Ohio. (*Id.*, ¶ 14; Defs.' Ex. B, Kearns Aff., Doc. 53-2, ¶ 4.) IntelliSource is a staffing agency contracting with clients nationwide, and Zulily is an online retailer. (Doc. 53-2, ¶ 4.) While working at the Zulily warehouse, Plaintiff alleges that supervisors and other entities engaged in a pattern of discriminatory and harassing behavior that ended in his unlawful termination on March 27, 2014. (Doc. 37, ¶¶ 15, 41.) The harassment

1

included putting Plaintiff under constant surveillance of "almost everyone in leadership" daily, including Zulily manager Verall Dugger, IntelliSource operation manager Nicole Gains, outbound team-lead Sherry Bush, and arrival and receiving supervisor Tyler Stover. (Doc. 37, ¶ 15.) Two unidentified persons, working for neither IntelliSource nor Zulily, also watched and followed him daily. (*Id.*, ¶ 16.) Both of these persons, whom Plaintiff has dubbed "intruder No1" and "intruder No2," wore fake professional badges and would hide any time Plaintiff approached too closely. (*Id.*, ¶¶ 16-17.)

Plaintiff's remaining factual allegations are not organized thematically or chronologically. These vignettes of alleged wrongdoing are woven free-form throughout the pleading, and persons appear sometimes with no other identifying information besides their first or last name. The Court organizes the events for which there are dates in chronological order, after which the Court sets forth Plaintiff's other averments.

Toward the end of 2013, Zulily implemented a new receiving system, which Plaintiff was not trained to use. (*Id.*, ¶ 32.) He was the only employee not trained. (*Id.*)

On October 11, 2013, Plaintiff was talking with his colleague, Travis Wilson, when, according to Wilson, Plaintiff, who was operating a pallet jack, intentionally ran over Wilson's foot. (Wilson Incident Report, Doc. 58-5 at 1.) Andrew Entinghe, an eyewitness to the incident, saw Wilson and Plaintiff exchanging words and he says that Plaintiff, who had room to back out, nonetheless charged forward on the pallet jack toward Wilson, after which Wilson pulled his leg up. (Entinghe Incident Report, Doc. 58-5 at 2.) Plaintiff disputes Wilson's and Entinghe's accounts of the incident. (Doc. 37, ¶ 43.)

2

On October 14, 2013, Plaintiff notified Kristen[1] Sturman, an employee at IntelliSource tasked with helping workers transition to Zulily, about Zulily management's discriminatory and retaliatory behavior. (*Id.*, ¶ 44-45.) Rather than address Plaintiff's concerns, she instead entered into a conspiracy with Zulily management to terminate Plaintiff illegally. (*Id.*, ¶ 45.)

In January of 2014, Plaintiff was denied a blue jacket to commemorate two years of employment at Zulily. (*Id.*, ¶ 25.) He was the only Zulily worker denied the jacket. (*Id.*)

In February of 2014, Zulily moved to a four-day, 10-hour work week from a five-day, eight-hour one. (*Id.*, ¶ 33.) Associates had a choice of shifts, and everyone besides Plaintiff was awarded their first choice. (*Id.*) On January 31, 2014,[2] one Stover held a meeting where he confirmed the denial of Plaintiff's shift-change request. (*Id.*, ¶ 48.) Plaintiff confronted Stover later that day, telling him the denial was discriminatory. (*Id.*) Stover told Plaintiff that the decision was made by higher ups, and that he could do nothing about it. (*Id.*)

One month before his termination, one Dane, a supervisor, asked Plaintiff to help in the packing department. (*Id.*, ¶ 22.) Plaintiff complied with the request, but Dugger, who had once again followed Plaintiff, inexplicably became visibly angry and yelled Plaintiff's name. (*Id.*)

On Sunday, March 23, 2014, management asked receiving associates to put away items. (*Id.*, ¶ 38.) Other associates did not comply with the request yet were not reprimanded. (*Id.*) Plaintiff, meanwhile, complied with the request yet was reprimanded for working too slowly. (*Id.*) Plaintiff, believing he was being treated unfairly, told management about his concerns of discrimination that same day. (*Id.*, ¶¶ 38-39.)

---

[1] Elsewhere Plaintiff refers to one Kristina, *see* Doc. 37, ¶ 41, but Kristen and Kristina are the same person.
[2] This is an anachronism, but the Court will treat the events as though they happened in chronological order.

Plaintiff worked without incident until Thursday, March 27, 2014, when team leader Shontelle Mosely accused Plaintiff of insubordination. (*Id.*, ¶ 40; Pl.'s Response in Opp'n, Doc. 58 at 8; Kearn's Decl., Doc. 53-2, ¶ 11.) Believing the accusation to be dishonest, Plaintiff went to speak with Sturman and one Lindsay about it. (Doc. 37, ¶ 40.) During the discussion, Plaintiff defended himself and tried to convince them that the accusation was discriminatory and retaliatory. (*Id.*, ¶ 41.) Sturman asked Plaintiff to lower his voice to a whisper, which Plaintiff believes was because she wanted to cover up the fact that the accusation was a racist fabrication. (*Id.*) Plaintiff's defense was unsuccessful, and he was suspended and terminated later that day. (*Id.*)

Plaintiff's remaining averments are as follows:

While working in the receiving department, one Genevieve, a fellow associate, asked Plaintiff to stop what he was doing and help her instead. (*Id.*, ¶ 19.) Plaintiff responded by saying, "[Y]ou can do it, why me?" (*Id.*) Genevieve replied that the request was an order from Dugger, after which an argument ensued. (*Id.*) Dugger witnessed the verbal altercation. (*Id.*)

Another time, Dugger followed Plaintiff and then told Sturman to direct Plaintiff to complete another task, which she accomplished by asking a team lead to notify Plaintiff of his new assignment. (*Id.*, ¶ 21.) Plaintiff complied with this request. (*Id.*)

Stover once asked Plaintiff if he were talking about him, to which Plaintiff responded, "I don't like discrimination I am subjected to [sic]." (*Id.*, ¶ 24.)

Although hired to work in arrivals, Plaintiff was transferred to receiving without notice or consent. (*Id.*, ¶ 26.) Plaintiff did not want to work in receiving because, unlike in arrivals, where workers are rated by units per hour, there is no objective metric in receiving by which Zulily could rate workers. (*Id.*) Plaintiff was already concerned that he was going to be unlawfully

4

terminated, and he feared his transfer to a position that relied less on objective indicators of productivity would make it easier for management to terminate him pretextually. (*Id.*)

Plaintiff alleges that management chose his work site so they could monitor and follow him "anywhere and anytime within the facility," which made his location "perfectly chosen for perfect discrimination" against him. (*Id.*, ¶ 28.)

At some point, one Liz, a team lead, ordered a runner to bring items for Plaintiff to handle. (*Id.*, ¶ 29.) Plaintiff thought Liz singled him out because there were workers manning at least 20 other stations between them who could have handled the items. (*Id.*, ¶ 29.) Later, one Becky, who was not a team leader, asked Plaintiff to collect totes three times in short succession. (*Id.*, ¶ 31.) By the third request, Plaintiff responded by saying "you keep sending me while you know there is no totes [sic]." (*Id.*) Becky reported Plaintiff's resistance to Stover, who warned Plaintiff that he would be reprimanded for insubordination if he did not collect the totes. (*Id.*) Plaintiff ultimately complied with the request, again finding no totes. (*Id.*)

Finally, Plaintiff avers that he was assigned to work positions involving much more physical exertion than others, and which other employees avoided. (*Id.*, ¶ 34.)

### B. Procedural History

Plaintiff brought this action on June 19, 2015, alleging that IntelliSource and Zulily unlawfully discriminated and retaliated against him due to his race and nationality in violation of 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil Rights Act ("Title VII," or "the Act"), which prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, . . . or national origin," or "limit[ing], segregat[ing], or classify[ing] . . . employees . . . in

5

any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, . . . or national origin," 42 U.S.C. § 2000e(a)(1)-(2), and also prohibits employers from "discriminat[ing] against any individual . . . because he has opposed an [unlawful employer] practice[,] . . . or because he made a charge" alleging an unlawful employer practice. 42 U.S.C. § 2000e-3(a).

## II. STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the

6

light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Finally, the Court recognizes that Plaintiff is proceeding without the benefit of an attorney. A *pro se* litigant's pleadings must be, and in this instance are, construed liberally and held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### III. ANALYSIS

Title VII prohibits an employer from discriminating against any individual based on that individual's race, national origin, or other protected characteristic, or retaliating against an employee who complains about such discrimination. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a); *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 955 (6th Cir. 2014); *Halfacre v Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 431 (6th Cir. 2007). A plaintiff may prove discriminatory treatment or retaliation either with direct evidence, or with circumstantial evidence that creates an inference of discrimination or retaliation. *Shazor*, 744 F.3d at 955; *Halfacre*, 221 F. App'x at 431.

Plaintiff has not introduced direct evidence of discrimination. Therefore, the Court applies the burden-shifting framework for circumstantial evidence established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Plaintiff must make a prima facie case of discrimination by showing that: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar

7

conduct, he was treated differently from similarly situated employees outside the protected class or replaced by someone outside the protected class. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). After the defendant meets its burden, the plaintiff must then demonstrate that the defendant's explanation was a pretext for discrimination. *Id.* The burden to show pretext requires a plaintiff only "to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (quotation marks and citation omitted). A plaintiff may demonstrate pretext by showing that the proffered nondiscriminatory reasons had no basis in fact, were insufficient to motivate the adverse action, or did not actually motivate the action. *Harris v. Metro. Gov't of Nasvhille & Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010).

Besides prohibiting employers from engaging in certain types of discrimination, Title VII also prohibits employers from retaliating against an employee because she "opposed any practice made an unlawful employment practice by [Title VII]". 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in activity protected under the Act; (2) his employer knew he engaged in the protected activity; (3) his employer subjected him to an adverse employment action; and (4) there is a causal connection between his activity and the employer's action. *Halfacre*, 221 F. App'x at 431. The rest of the burden-shifting framework is the same as with a claim of discrimination in violation of Title VII. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676-77 (6th Cir. 2013).

Finally, Title VII also prohibits employers from engaging in or countenancing workplace harassment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("[Title VII] 'is not limited to "economic" or "tangible" discrimination. [Its language] evinces a congressional intent "to strike at the entire spectrum of disparate treatment" . . . in employment' which includes requiring people to work in a discriminatorily hostile or abuse environment.") (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64) (1993) (quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n. 13 (1978))). Employers violate the act "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Meritor*, 477 U.S. at 65). A court's analysis of a harassment claim "should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance." *Williams v. Gen. Motors. Corp.*, 187 F.3d 553, 567 (6th Cir. 1999) (quoting *Forklift*, 510 U.S. at 25) (Ginsburg, J., concurring)).

## A. Discrimination

As to Plaintiff's claim of discrimination on the bases of race and national origin, only the fourth prong of the Court's prima facie inquiry is at issue, which means the Court must establish whether Plaintiff "was treated differently from similarly situated employees outside [his] protected class." *Perry*, 209 F.3d at 601. Controlling Sixth Circuit law provides that:

> to qualify as "similarly situated" in the disciplinary context, the plaintiff and the colleagues to whom he seeks to compare himself "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Perry*, 209 F.3d at 601 (quoting *Mitchell*, 964 F.2d at 583). The Sixth Circuit directs "that in applying the standard," the Court "should not demand exact correlation, but should instead seek

9

relevant similarity. *Id.* (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Although Plaintiff avers numerous times that he was singled out for mistreatment, (*see* Doc. 37 at 3-2, PAGEID # 154 ("There were Whites associates, African American and Blacks from other African nations' associates but none of them get followed and watched but me [sic]."); *id.* ("There was no need for verall to come over by my station and have an associate of the same rank than me have me do something [sic]. . . . It was so because it was about me."); *id.* at 3-3, PAGEID # 155 ("I was surrounded by white packing associates and also black associates including Ghanaian whose nation origin was different than mine [sic]. None of them got harassed."); *id.*, ¶ 30 ("I do not know another associate who experienced such disparate treatment.")), only once does he aver that a non-black, non-Congolese employee was treated differently than he was *for the same conduct*. This is consequential because Plaintiff's work record was blemished, and included the pallet-jack incident with Travis, the verbal altercation with Genevieve and, as discussed in depth below, outright insubordination to Mosely.

Plaintiff's lone assertion that he was treated differently from a similarly-situated, non-minority employee is that, on March 23, 2014, management asked receiving associates to put away items and, although other associates refused to comply with the request yet were not reprimanded, Plaintiff did comply with the request yet was reprimanded for working too slowly. (Doc. 37, ¶ 38.) The Court would find this sufficient to establish disparate treatment, but the claim nonetheless cannot survive summary judgment because the disparate treatment Plaintiff suffered was connected only with a reprimand, which is not an adverse employment action. *Perry*, 209 F.3d at 601; *see White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (to be "adverse," the action must "'constitute[] a significant change in employment status, such

10

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

So the only time when Plaintiff avers that a similarly situated non-black, non-Congolese employee was treated differently than he was, the facts as alleged do not connect the disparate treatment to an adverse employment action, which means the claim fails. *See Perry*, 209 F.3d at 601.

Finally, Plaintiff has also not pointed to any evidence that he was replaced by a member of a non-protected class which, because he has not pointed to evidence of disparate treatment, is fatal to his claim of discrimination. *Perry*, 209 F.3d at 601. Indeed, Plaintiff admits that he was replaced, at least temporarily, by a Ghanaian, i.e. someone else also from sub-Saharan West Africa. (Doc. 58 at 23; Excerpts of Kouekassazo Depo., Doc. 53-1 at 85, PAGEID # 458).

The Court finds that Plaintiff has failed to establish his prima facie case for discrimination on the bases of race and national origin, so the Court **GRANTS** Defendants' Motion for Summary Judgment as to those claims.

### B. Retaliation

#### 1. Prima Facie Case

The Court's examination of Plaintiff's retaliation claim concerns causation. Defendants argue that Plaintiff cannot survive summary judgment on this claim because he has failed to allege that the adverse employment actions he suffered occurred after he engaged in any protected activity. Intuitively, a plaintiff must establish that they engaged in protected activity before they suffered the adverse employment action. *Greathouse v. Westfall*, 212 F. App'x 379,

11

385 (6th Cir. 2006) ("To constitute retaliation, quite sensibly, the adverse action must occur *after* the employee engages in the protected activity.").

According to Deana Kearns, Senior Director of Human Resources for IntelliSource, Plaintiff was terminated a few days after March 23, 2014,[3] and he was informed of the termination on or around April 10, 2014. (Doc. 53-2, ¶¶ 3, 11, 15.) Kearns attests that Plaintiff did not complain to IntelliSource about unlawful discrimination until April 8, 2014, more than a week after his termination. (*Id.*, ¶ 16.)

Plaintiff counters that he engaged in protected activity as follows: first, during a conversation with Stover, Plaintiff "told him [he] didn't like discrimination [he was] subjected to [sic]"; next, he asserts that he "told Management about such Retaliation [sic] and discrimination in writing on Sunday March 23, 2014"; finally, he avers that, during his discussion with Sturman and Lindsay concerning the accusation of insubordination that ultimately cost Plaintiff his job, Sturman read his letter complaining about discrimination. (Doc. 37, ¶¶ 24, 39, 41.)

Beyond his own self-serving statements, Plaintiff points to no evidence of Defendants' knowledge of his protected activity. Plaintiff did attach to his opposition brief a letter from him addressed to an anonymous IntelliSource manager. (Letter, Doc. 58-4.) The letter concerns the October 11, 2013 pallet-jack incident between Plaintiff and Wilson. Curiously, although Plaintiff writes that he will tell management why he thought the incident was a fabrication that "was . . . purposely motivated," nowhere does he even hint at discriminatory intent. (*Id.*)

Because Plaintiff did not direct the Court to any evidence, much less significant probative evidence, that Defendants were aware of his protected activity, the Court is inclined to find that his retaliation claim cannot survive summary judgment. But even assuming that he had relied on

---

[3] The affidavit says that this occurred on March 23, 2015, (*see* Doc. 53-2, ¶ 11), which is certainly a typographical error.

12

probative record evidence, Plaintiff's retaliation claim still fails because Defendant has established a legitimate, non-discriminatory reason for his termination, which Plaintiff has not rebutted.

## 2. Legitimate, Non-discriminatory Reason

Defendants contend that they had a legitimate, non-discriminatory reason to terminate Plaintiff, namely that he "was terminated for insubordination when he refused, after being asked numerous times, to go from the 'receiving' department to the 'put-away/picking' department for the day to alleviate workflow needs." (Doc. 53 at 1.) Plaintiff admits that the request was not unusual, and that numerous other employees working with him were also reassigned that day. (Excerpts of Kouekassazo Depo., Doc. 53-1 at 63-66.) Plaintiff also admits that, at least initially, he refused the request. (*Id.* at 63) ("[W]hen he ask me [sic], I told him I was doing verification".) Mosely, the supervisor who asked Plaintiff to switch departments for the day, reported to management Plaintiff's refusal. (*See* Kearns Decl., Doc. 53-2, B-2, INTELLISOURCE 000048-000049) ("I asked Eloi to clock over into put away for the rest of the day. . . . When I asked him he shook his head [']no['].".)

Based on the foregoing, the Court finds that there is sufficient evidence in the record, including contemporaneous documentation, an eyewitness statement, and Plaintiff's own admission, to establish that Plaintiff was insubordinate, which is a legitimate reason for termination. *Arnold v. Marous Bros. Constr., Inc.*, 211 F. App'x 377, 381 (6th Cir. 2006) ("This court has confirmed that insubordination can constitute legitimate reasons for termination.") (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).

3. Pretext

Having found that Defendants had a legitimate, non-discriminatory reason to terminate Plaintiff, Plaintiff now bears the burden of production "to show that [Defendants'] proferred nondiscriminatory reason was pretext," i.e. whether the proffered nondiscriminatory reason had no basis in fact, was insufficient to motivate the adverse action, or did not actually motivate the action. *Harris*, 594 F.3d at 486; *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Plaintiff has not met his burden. There is ample evidence establishing that Plaintiff was in fact found to be insubordinate. (*See* Doc. 53-1 at 63; Kearns Decl., Doc. 53-2, B-2, INTELLISOURCE 000048-000049.) And Plaintiff has not directed the Court to probative evidence to establish either that his insubordination would have been an insufficient basis for termination, or that his insubordination did not actually motivate Defendants to terminate him. As such, Plaintiff's claim cannot survive summary judgment. *See Finkbeiner*, 689 F.3d at 593-94 ("Summary judgment for the defendant [is] appropriate . . . 'if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

In the absence of any record evidence to the contrary, and with the presence of abundant and uncontroverted evidence that Defendants' reason for terminating Plaintiff was not discriminatory, Plaintiff has not rebutted Defendants' showing, and the Court thus **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim.

### C. Harassment

Finally, Plaintiff alleges that he suffered harassment at the workplace, including being subjected to the constant surveillance of unidentified intruders who, although not hired by IntelliSource or Zulily, nonetheless acted with Defendants' agreement. (Doc. 37, ¶ 18.) Plaintiff levies several other accusations about being subjected to a hostile work environment and singled out for mistreatment. (*Id.*, ¶¶ 20-23, 31, 33-35, 37.) But, significantly, nowhere does he allege that the harassment affected his work, only that it was unpleasant. Indeed, Plaintiff's displeasure at being switched from arrivals to receiving indicates that he was not hindered from performing and, and was consistently and demonstrably productive despite the constant harassment he suffered. (*See* Doc. 37, ¶ 26.)

Given that the Court's analysis of a Title-VII harassment claim centers on a finding that the harassment negatively affected a plaintiff's work, *see Harris*, 510 U.S. at 25, Plaintiff's failure to show that his work actually suffered means that his claim cannot survive summary judgment, and the Court therefore **GRANTS** Defendants' motion as to that claim. *Id.*

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Because the Court did not and need not rely on any evidence at issue in any outstanding motion, the Court **DENIES** all of those motions as **MOOT**. Plaintiff's evidentiary motions amount to bare accusations that Defendants are being dishonest, and no motion filed either by Plaintiff or Defendant demonstrates how the Court's intervention in discovery would, or could, have altered the Court's analysis or conclusion in this Opinion and Order. The Court **ORDERS** the Clerk to enter judgment in favor of Defendants. This case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

                                                                          <u>s/Algenon L. Marbley</u>
                                                                      **ALGENON L. MARBLEY**
                                                                      **UNITED STATES DISTRICT COURT**

**Dated: September 26, 2016**